**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alvin Ray Yount, | No. CV-08-8011-PCT-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Regent University, Inc., | |
| Defendant. | |

Defendant has moved for summary judgment on all of Plaintiff's claims: disability discrimination, retaliation, breach of contract, and infliction of emotional distress. Dkt. #65. A response and a reply have been filed. Dkt. ##72; 78. Additionally, Plaintiff, a pro se litigant, has moved to impose sanctions (Dkt. #68), to strike two affidavits (Dkt. #74 at 2-3), to strike a deposition and to submit a corrected version (Dkt. #74 at 4-5), and to produce new evidence (Dkt. #80). The Court will grant Defendant's motion for summary judgment on Plaintiff's claims for retaliation and emotional distress. It will deny Plaintiff's motion for sanctions, deny his motion to strike evidence, and deny his motions to produce new evidence without prejudice.[1]

---

[1] Defendant has requested oral argument. The request is denied because the parties have fully briefed the issues and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991); Fed. R. Civ. P. 78.

**I.     Background.**

Plaintiff Yount, a resident of Prescott Valley, Arizona, commenced this action to recover for alleged disability discrimination, retaliation, breach of contract, and infliction of emotional distress by Regent University, located in Virginia Beach, Virginia. *See* Dkt. ##1; 49. Plaintiff was enrolled in Defendant's doctoral degree program in the Regent University School of Communications and the Arts ("the School") in 2005. In August of that year, Plaintiff complained to the Dean of Regent University in a letter (Dkt. #49 at Ex. J) after the School refused to allow Plaintiff to take a statistics class at the University of Phoenix in lieu of an on-campus class at Regent. Dkt. ##49 at 11-12, Ex. J; 51 at 23; 65 at 20. Following several weeks of correspondence with the School's administration, Plaintiff withdrew this "appeal" to the Dean, and the School's administration gave him the option to take the class at any "accredited university." Dkt. ##49 at Ex. K-M; 51 at 23; 65 at 20. The School withdrew this option in October, 2005, when it identified a substitute statistics class at Regent. Dkt. ##49 at 12-13; 65 at 20-21. The Regent class cost $600 more than the class at the University of Phoenix. *See id.* Plaintiff asserts that the dispute over the statistics class generated considerable animosity between him and the School's administration, especially the Associate Dean of the School. *See* Dkt. ##49 at 9-11; 72 at 20-21, 24.

In January, 2006, Plaintiff began to suffer from lower back pain. Dkt. ##49 at 2; 63 at 3; 72 at 4. He states that the pain was so severe that it curtailed his "ability to learn, reach, lift, stand, walk, sit upright, and work" for several weeks, and that it even necessitated an ambulance call. Dkt. ##72 at 5; 72-2 at 11. Physicians ultimately attributed Plaintiff's pain to spinal disc protrusions, degenerative disc bulging, and mild scoliosis consistent with "degenerative disc disease," and prescribed Plaintiff pain medication. Dkt. ##49 at 2, Ex. A; 65 at 3; 72-2 at 11. On February 12, 2006, Plaintiff contacted the Dean of the School (1) to explain his absence from his online classes during recent weeks, (2) to state that he would be unable to participate in the doctoral degree program for the remainder of the semester due to his back pain, and (3) to request "incomplete" grades for each of his ongoing Regent classes. Dkt. ##49 at 3, Ex. F; 65 at 3.

1　　　The Associate Dean denied Plaintiff's request on February 14, explaining that "an
2 Incomplete is [only] given when 75% or more of class work has been completed" in an
3 online class. Dkt. ##65 at 4; 72 at 6. The parties dispute whether this 75% threshold was
4 derived from routine academic practices at the School or was contrived to deny Plaintiff's
5 request maliciously. *See* Dkt. ##65 at 4; 66 at 5; 72 at 10-11. The parties do not dispute,
6 however, that the 75% threshold is not explicitly stated in Regent's official academic
7 guidelines. *See, e.g.*, Dkt. #65-15 at 5 ("[T]he college handbook does not identify a
8 particular percentage of work that must be completed before an Incomplete grade can be
9 granted."). After denying Plaintiff's request, the Associate Dean offered to treat it as a
10 request for a "Leave of Absence from the [doctoral] program for medical reasons," which
11 would enable Plaintiff to withdraw from the School for up to two semesters without losing
12 credit for completed classes. Dkt. ##65 at 4; 72 at 7. But the School would grade Plaintiff's
13 ongoing classes as "W" rather than "incomplete" if he decided to withdraw. Dkt. ##65 at
14 4; 72 at 7, 24; 78 at 5-6.

15　　　In mid to late February, Plaintiff was withdrawn from his three online classes, but he
16 successfully re-enrolled in two of the classes after voicing his objection to the School.
17 Dkt. ##65 at 23; 72 at 7-8, 11; 78 at 6. Plaintiff continued his studies through the end of the
18 semester and received a grade of "incomplete" in one course and a letter grade of "A-" in the
19 other. Dkt. ##51 at 10; 72 at 17; 78 at 5-6. Plaintiff asserts that he insisted on continuing
20 these classes despite his back pain because the School administration might have improperly
21 denied him readmittance if he had taken a formal leave of absence. *See* Dkt. #72 at 15-17.

22　　　On July 24, 2006, Plaintiff sent an email to a member of the administration to
23 complain about the School's refusal to give him "incomplete" grades in February. Dkt. ##72
24 at 17-18; 78 at 7. Plaintiff asserts that this email was followed by six distinct acts of
25 retaliation during the summer of 2006: (1) a threat of dismissal by the Dean of the School
26 on July 26, (2) denial of Plaintiff's preferred slate of reviewing committees for his doctoral
27 program, (3) raising the number of prerequisite credits for an examination Plaintiff needed
28 to take, (4) reduction of online classes available to Plaintiff, (5) denial of Plaintiff's

- 3 -

1 application to an elective tutorial, and (6) denial of Plaintiff's application to a history course.
2 Dkt. ##49 at 19; 72 at 17-20. Defendant denies that the School administration knew of
3 Plaintiff's email before taking each of these actions, and further argues that each change was
4 either motivated by *bona fide* academic concerns or did not take effect in time to impact
5 Plaintiff's education. Dkt. ##65 at 15-19; 78 at 7-8.

6 Plaintiff also asserts that his dispute with the School caused him emotional distress
7 because he was compelled to continue his classes notwithstanding his back pain, which, in
8 turn, exacerbated that condition. *See, e.g.*, Dkt. #72 at 22. Apart from the allegations
9 common to his other claims, Plaintiff states that two other actions by the School's
10 administration support his claim for emotional distress: (1) "[r]eferring to Plaintiff as a
11 'Yahoo'" in one inter-office email, and (2) remarking, "see what I have to deal with," in
12 another. Dkt. #72 at 22-23.

13 Defendant filed the motion for summary judgement on December 19, 2008. Dkt. #65.
14 Plaintiff moved for sanctions on January 16, 2009 due to Defendant's method and timing of
15 service: "[t]he Certificate of Service [states that Defendant's motion] was sent by 'Mail' on
16 December 20th when, in fact, it was hand delivered [by Fed Ex] . . . on December 24[.]"
17 Dkt. #68 at 2. Plaintiff asserts this Christmas Eve service reflected an effort by Defendant
18 to disrupt Plaintiff's holiday and to violate his rights under the First Amendment.[2] *Id.*
19 Moreover, Plaintiff asserts that one affidavit supporting Defendant's motion (Dkt. #66-15)
20 was obtained by either coercion or fabrication, and that another (Dkt. #66-7) intentionally
21 misrepresents the School's policy regarding the 75% threshold for "incomplete" grades. *See*
22 Dkt. #68 at 9-10.

23 On February 2, 2009, Plaintiff moved to strike these affidavits as well as an
24 uncorrected version of Plaintiff's deposition (Dkt. #66-2) supporting Defendant's motion for
25 summary judgment. *See* Dkt. #74 at 2-5. Plaintiff requests that he be allowed "to resubmit

---

[2] Plaintiff has requested oral argument in his motion for sanctions. Because the motion has been fully briefed (Dkt. ##68; 71), the Court will deny Plaintiff's request. *See supra* footnote 1.

- 4 -

the final edited version" of his deposition. Dkt. #74 at 5. Further, on February 24, 2009, Plaintiff moved to introduce new evidence to rebut Defendant's contention that Plaintiff was able to, and did, work as a professor for a substantial portion of 2006. *See* Dkt. #80 at 1-3.

**II.     Defendant's motion for summary judgment.**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also* Rule 1.10(l)(1), Rules of Practice of the United States District Court for the District of Arizona ("Any party opposing a motion for summary judgment must . . . set[] forth the specific facts, which the opposing party asserts, including those facts which establish a genuine issue of material fact precluding summary judgment in favor of the moving party.").

The Court must construe Plaintiff's pleadings liberally because Plaintiff is proceeding pro se. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of [a pro se plaintiff's] complaint, 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers.'") (citations omitted); *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001) ("[W]e have a 'duty . . . to construe pro se pleadings

liberally.'") (citations omitted); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (citation omitted).

### A. Disability discrimination.

Plaintiff claims that Defendant has violated the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et. seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et. seq.*. *See* Dkt. #49 at 1, 5-6, 8. The ADA "prohibits discrimination by public entities against qualified individuals with a disability." *Wong v. Regents of Univ. of Calif.*, 410 F.3d 1052, 1062 (9th Cir. 2005); *see* 42 U.S.C. §§ 12131-12132, 12182.[3] A "qualified individual" is a disabled individual "who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements" for the programs of a public entity. 42 U.S.C. § 12131. Similarly, the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability . . . be denied the benefits of" the programs of a public institution. 29 U.S.C. § 794(a). Public institutions must therefore provide reasonable accommodations for disabled individuals, including modifications to institutional policies and procedures, under both the ADA and the Rehabilitation Act. *See* 26 U.S.C. 794(b); 42 U.S.C. § 12182.[4]

---

[3] The Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, became effective on January 1, 2009. Because "Congress did not indicate that it may be applied retrospectively," however, its terms do not control Plaintiff's claim. *Rohr v. Salt River Project Agric. Improvement & Power Dist.*, --- F3d. ---, No. 06-16527, WL 349798 (9th Cir. Feb. 14, 2009). "Nevertheless, because the ADAAA sheds light on Congress' original intent when it enacted the ADA," this Circuit recognizes that the ADAAA may be relevant to the scope of terms within the ADA. *See id.* Consideration of the ADAAA is not necessary in this order because the parties' pleadings do not raise a substantial statutory dispute.

[4] As correctly noted by Defendant, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v. Regents of the Univ. of Calif.*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) (citation omitted).

1    Defendant does not dispute that Plaintiff was qualified to attend Regent or that
2  Regent's activities are controlled by the ADA and the Rehabilitation Act. It is therefore
3  incumbent on Defendant to show that no reasonable jury could find that (1) Plaintiff was
4  disabled at the time of the alleged discrimination, and (2) Defendant failed to provide him
5  with a reasonable accommodation.

**1.    Disability.**

The ADA defines a disability as (1) a physical or mental impairment that substantially limits one or more of the major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 478 (1999) (citing 42 U.S.C. § 12102(2)); *see Gribben v. U.S. Parcel Serv., Inc.*, 528 F.3d 1166, 1169 (9th Cir. 2008). "A major life activity [is] 'a basic activity that the average person in the general population can perform with little or no difficulty.'" *McAlindin v. San Diego*, 192 F.3d 1226, 1233 (9th Cir. 1999) (citation omitted); *see* 29 C.F.R. § 1630.2(I) & App. (listing certain major life activities, such as "walking" and "working").

The extent to which a purported disability limits one or more of the major life activities is an "individualized inquiry." *Fraser v. Goodale*, 342 F.3d 1032, 1039 (9th Cir. 2003). This inquiry requires consideration of "the nature and severity of the impairment, the duration or expected duration of the impairment, as well as the permanent or long term impact of the impairment." *Id.* at 1038. This Circuit "does not require comparative or medical evidence to establish a genuine issue of material fact" for purposes of summary judgment. *Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005); *see Gribben*, 528 F.3d at 1170; *cf., e.g.*, *Gomez v. USPS,* 32 F. App'x 889, 893 (9th Cir. 2002) (determining that a postal employee failed to demonstrate spinal injuries were "disabilities" because he did not offer any evidence of the severity, duration, or impact of his alleged impairments with respect to any major life activities). Instead, a "plaintiff's testimony may suffice to establish a genuine issue of material fact," so long as that testimony "contains sufficient detail to convey the existence of an impairment." *Head*, 413 F.3d at 1058-59.

- 7 -

1   In *Gribben*, the Ninth Circuit held that a parcel worker's testimony regarding his
2   inability to walk outside during the summer in Phoenix due to a heart condition was
3   sufficient to establish a disability in the context of summary judgment. 528 F.3d at 1169-70.
4   The court reasoned that plaintiffs are "not required to submit . . . comparative evidence" of
5   the general population's ability to engage in a major life activity to survive summary
6   judgment; rather, they must simply identify a limitation on a major life activity caused by
7   their purported disability, and describe how that limitation is "substantial." *See id.* at 1170.

8   Here, Defendant argues that Plaintiff was not substantially impaired by his back pain
9   because it diminished over time and he was able to undertake certain physical activities
10  during the spring of 2006, such as lecturing in a standing position. Dkt. #65 at 7-11. But
11  Plaintiff has offered evidence that his ability to sit, eat, walk, and undertake other major life
12  activities was substantially impaired. *See, e.g.*, Dkt. #72-2 at 2-3 (Plaintiff's wife avowing
13  that he "would skip many of his meals because he could not sit upright long enough to eat,"
14  and was occasionally bedridden due to his pain). This evidence, in conjunction with
15  Plaintiff's ambulance call and diagnosis of degenerative disc disease, provides enough detail
16  to support the existence of an impairment. *See Gribben*, 528 F.3d at 1170. Plaintiff has
17  raised genuine issues of material fact regarding the nature, severity, duration, and impact of
18  his disability. *See id; cf. Gomez,* 32 F. App'x at 893.

19  **2.    Reasonable Accommodations.**

20  Disability discrimination can include, among other things, "failure to make reasonable
21  modifications in policies, practices, or procedures, when such modifications are necessary"
22  to offer an institution's services to a disabled individual, "unless the [institution] can
23  demonstrate that making such modifications would fundamentally alter the nature" of those
24  services. 42 U.S.C. § 12182(b)(2)(A)(ii). Plaintiff bears the initial burden of "showing the
25  existence of a reasonable accommodation," and "the burden then shifts to the educational
26  institution to produce evidence that the requested accommodation would require a
27  fundamental or substantial modification of its program or standards." *Zukle*, 166 F.3d at
28  1047.

Courts defer to "a genuinely academic decision" that a proposed accommodation is untenable under an educational institution's policies, practices, or procedures. *See id.* at 1047-48 (describing cases). Because courts "must be careful not to allow academic decisions to disguise truly discriminatory requirements," an academic institution is obligated, at a minimum, to "seek suitable means of reasonably accommodating a handicapped student and to submit a factual record" indicating that the institution reached a "professional, academic judgment." *Id.* at 1048 (citing *Wynne v. Tufts Univ. Sch. of Med.*, 932 F.2d 19, 25-28 (1st Cir. 1991); *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 859 (5th Cir. 1993) (deference is appropriate when "the proposed modifications entail academic decisions")).

In *Zukle*, the court determined that a medical school's refusal to excuse a learning-disabled student from a continuous, in-hospital clerkship did not violate the school's duty to reasonably accommodate her. *Id.* at 1048-50. The court reasoned that the medical school had already provided the plaintiff with "all of the accommodations that it normally offer[ed] learning disabled students" – such as allowing her to re-take courses, decelerate her exams, and escape automatic-dismissal provisions in school bylaws – and that "no student had been allowed to rearrange her clerkships in the manner [the plaintiff had] requested." *Id.* at 1049-50. Moreover, quoting an affidavit from the school's dean, the court noted that an in-hospital clerkship is "a vital part of [a] medical education" because it "simulate[s] the practice of medicine," and that any interruptions would therefore compromise the clerkship's instructive value. *See id.* at 1050.

Plaintiff alleges that Defendant improperly invoked the 75% threshold to deny his request for an accommodation in the form of "incomplete" grades. *See* Dkt. ##66-15 at 3; 72 at 3. Defendant asserts that such requests are typically considered only under "extenuating circumstances late in the semester that preclude the student from completing only a remaining substantial final assignment." Dkt. #65 at 4. But apart from stating that its denial of Plaintiff's request was a "considered" judgment, Defendant has not argued that its decision was grounded in any academic concerns, or shown that an "incomplete" grade would detract from the quality of instruction at Regent. Dkt. ##65 at 12-13; 78 at 5-6; *cf.*

- 9 -

1  *Zukle*, 166 F.3d at 1047-48.  Thus, Defendant has not established grounds for deference to
2  its decision on summary judgment, and the ordinary burdens articulated in *Zukle* apply.  *See,*
3  166 F.3d at 1047 (plaintiff has the burden of "showing the existence of a reasonable
4  accommodation"; "the burden then shifts to the educational institution to produce evidence
5  that the requested accommodation would require a fundamental or substantial modification
6  of its program or standards").

7  The parties dispute whether "incomplete" grades were reasonable or necessary to
8  accommodate Plaintiff at the School.  *See, e.g.*, Dkt. ##65 at 13; 72 at 16.  Plaintiff connects
9  his argument that "incomplete" grades were a reasonable accommodation to his claim for
10 retaliation – he alleges that Defendant would have discriminated against him by refusing him
11 re-admittance to the School if he had accepted "W" grades and taken a formal leave of
12 absence.  Dkt. #72 at 16.  Construing Plaintiff's argument liberally, he is asserting that he
13 would have been deprived of the benefits of a Regent education if he withdrew from his
14 classes to take a leave of absence, and Defendant's proposed accommodation was therefore
15 unreasonable.  *See id*.  Plaintiff has presented evidence that when a student withdraws from
16 Regent there is no guarantee of readmittance.  He notes that the School's catalogue states that
17 all petitions for reinstatement are considered on an individual basis, raising the possibility
18 that Plaintiff's petition could be denied for improper reasons.  Dkt. #72 at 16.  Because
19 Plaintiff has presented evidence that an accommodation existed which would have avoided
20 the need for him to seek readmission to the school – "incomplete" grades without formal
21 withdrawal – he has raised a genuine issue of fact about whether Defendant failed "to make
22 reasonable modifications in policies, practices, or procedures."  *See Zukle*, 166 F.3d at 1047.
23 Defendant has not argued that Plaintiff's request for "incomplete" grades would require
24 fundamental or substantial changes to its written or unwritten policies.  *See* Dkt. ##65 at 12-
25 14; 78 at 5-6.  Therefore, Defendant has failed to meet its summary judgment burden on
26 Plaintiff's disability discrimination claim.  *See Zukle*, 166 F.3d at 1047-48.

27
28

**B.     Retaliation.**

"The ADA prohibits retaliation against or interference with a person who has asserted rights under the ADA." *Barnett v. U.S. Air, Inc.*, 196 F.3d 979, 994 (9th Cir. 1998) (citing 42 U.S.C. § 12203(a) & (b)). "To establish a prima facie case of retaliation under the ADA, [a plaintiff] must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse . . . action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849-50 & n.5 (9th Cir. 2004) (assessing retaliation in the context of employment discrimination and analogizing between the ADA and Title VII) (citation omitted). A plaintiff alleging retaliation under the ADA "will avoid summary judgment unless the [defendant] offers legitimate reasons" for an adverse action. *See Pardi*, 389 F.3d at 849-50. If legitimate reasons exist, it is incumbent on the plaintiff to "demonstrate a triable issue of fact as to whether such reasons are pretextual." *Id.* at 849 (citation omitted); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (establishing the burden-shifting analysis for discrimination cases); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (applying the *McDonnell Douglas* burden-shifting analysis applied in *Pardi* to an ADA claim). Defendant moves for summary judgment on the issue of causation, arguing that Plaintiff has established neither temporal proximity between his complaining email and Defendant's allegedly retaliatory actions, nor an unlawful pretext for those actions.

**1.     Temporal proximity.**

"When [adverse actions] closely follow complaints of discrimination, retaliatory intent may be inferred." *Pardi*, 389 F.3d at 850 (citing *Bell v. Clackamas County*, 341 F.3d 858, 865-66 (9th Cir. 2003) (stating that temporal proximity may, by itself, constitute strong circumstantial evidence of retaliation)). Defendant argues that Plaintiff has established no temporal proximity between his complaining email and Defendant's alleged retaliation. Dkt. #65 at 16. In response, Plaintiff presents evidence that he received a threatening letter from the Dean of the School within two days of the email, and that he was denied appointment of necessary committees and approval of his preferred degree plan on the same

- 11 -

1  day as the email. Dkt. #72 at 18-19. This evidence creates an issue of material fact regarding
2  the temporal proximity between Defendant's actions and Plaintiff's complaining email. *See*
3  *Bell*, 341 F.3d at 865-66; *see also Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74
4  (2001) (noting that separation of a few days is sufficient as sole evidence of retaliation in a
5  prima facie case).[5]

### 2. Pretext.

If a defendant proffers legitimate reasons for an adverse action, a plaintiff must show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (internal citation omitted); *see Godwin v. Hunt Wesson Inc*., 150 F.3d 1217, 1222 (9th Cir. 1998). A plaintiff relying solely on circumstantial evidence must present "'specific' and 'substantial' [evidence] in order to create a triable issue with respect to whether the [defendant] intended to discriminate." *Id*. The Ninth Circuit has reaffirmed this evidentiary burden following *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92 (2003) (recognizing the value of circumstantial evidence for withstanding summary judgment). *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1030-31 (9th Cir. 2006) (noting "tension" between *Godwin* and *Costa*, yet reaffirming the "specific and substantial" standard for circumstantial evidence in discrimination cases); *see Phillips v. PacifiCorp*, 304 F. App'x 527, 530 (9th Cir. 2008) (holding that instances of "cold" behavior toward the plaintiff did not constitute sufficiently "specific and substantial" evidence to overcome defendant's proffered non-discriminatory reasons for its adverse action).

---

[5] Defendant argues in its reply brief that those who took the alleged adverse actions did not know about Plaintiff's complaining email. Dkt. #78 at 7. Because Defendant did not make this argument in its opening brief, the Court will not consider it. "It is well established that issues cannot be raised for he first time in a reply brief." *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007).

1    Evidence of close temporal proximity may be sufficient to withstand summary
2 judgment if complemented by evidence that a plaintiff had no blemishes on his or her record
3 prior to an adverse action. *See Bell*, 341 F.3d at 866; *Little v. Windermere Relocation, Inc.*,
4 301 F.3d 958, 970 (9th Cir. 2002); *Chaung*, 225 F.3d at 1127; *see also Kotewa v. Living*
5 *Indep. Network Corp.*, 2007 WL 433544, *10 (D. Idaho 2007) ("[T]he fact plaintiff was
6 terminated within a few days of sending her [complaining] email alone may not establish
7 circumstantial evidence of pretext, but when the timing is combined with the fact Kotewa had
8 a good performance review the month before her termination, this is specific and sufficient
9 circumstantial evidence of pretext to allow plaintiff to survive summary judgment."). But
10 temporal proximity standing alone is not sufficient to raise a genuine issue with respect to
11 pretext. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1069-70 (9th Cir. 2003); *see also*
12 *Hudson v. Chertoff*, 2007 WL 2288062, *9 (W.D. Wash. 2007) (stating that temporal
13 proximity alone "does not constitute 'specific' or 'substantial' evidence").

14    Defendant asserts that Regent's Dean threatened to dismiss Plaintiff because he was
15 behaving abusively toward the School's administration contrary to Regent's student
16 handbook. *See, e.g.*, Dkt. ##78 at 7; 77-6 at 30-32. Defendant has also identified legitimate
17 reasons for its actions that affected Plaintiff's curriculum. *See, e.g.*, Dkt. #77-7 at 4-5 (stating
18 that the School restricted Plaintiff from taking a particular online course because it was
19 designed for masters students, not doctoral students). Defendant argues that Plaintiff has
20 failed to rebut these reasons with evidence showing they were mere pretexts for unlawful
21 retaliation against Plaintiff's complaining email. Dkt. ##78 at 7; 77-6 at 30-32. In response,
22 Plaintiff has presented correspondence suggesting that the School administration was hostile
23 toward him before his alleged disability in 2006. *See, e.g.*, Dkt. #49 at Ex. M. He has also
24 provided evidence, as noted, that his email and some of Defendant's actions were separated
25 by only a few days. *See* Dkt. #72-2 at 15, 17, 19.

26    Plaintiff's own evidence shows that his record at Regent was not unblemished. In
27 fact, the Dean identified this poor record as the basis for his letter threatening dismissal. *See*
28 Dkt. #49 at Ex. E. Although Plaintiff presents evidence of temporal proximity, his retaliation

claim is unlike those that have withstood summary judgment in this Circuit. He presents no additional circumstantial evidence that Regent's actions were sudden, unanticipated changes to an otherwise positive history at the institution. *Cf. Bell*, 341 F.3d at 866; *Little*, 301 F.3d at 970; *Chaung*, 225 F.3d at 1127. The Court concludes that the evidence of temporal proximity is not a "specific and substantial" indicator of pretext when viewed in isolation. Because Plaintiff has failed to create a genuine issue of fact as to whether Defendant's proffered reasons were designed to conceal unlawful retaliation against his complaining email, *see Stegall*, 350 F.3d at 1070; *Godwin*, 150 F.3d at 1222; *Hudson*, 2007 WL 2288062 at *9, the Court will grant Defendant's motion for summary judgment on the retaliation claim.

### C. Breach of contract.

Plaintiff has asserted a claim for breach of contract, claiming that Defendant contracted to allow him to take a statistics course at the University of Phoenix for $600 less than the tuition Defendant charged for a comparable course, and later reneged on that agreement. Defendant argues that this claim fails because (1) Defendant derived no benefit from Plaintiff's retraction of his written complaint regarding the statistics class, and (2) Plaintiff suffered no damages because he ultimately paid standard Regent tuition, an amount he always expected to pay. Dkt. #65 at 20-21. Plaintiff asserts that the arrangement was supported by consideration – Defendant sought retraction of Plaintiff's appeal to the Dean and Plaintiff retracted the appeal. Dkt. #72 at 20-21. This assertion raises a question of fact as to whether the purported contract was supported by consideration. Plaintiff also asserts that Defendant's change of position cost him $600 due to lost savings on tuition at the University of Phoenix, a sufficient allegation of damages to survive summary judgment.

- 14 -

**D.    Emotional distress.**

Plaintiff asserts a claim for intentional infliction of emotional distress in his second amended complaint. *See* Dkt. #49 at 15-17; 72 at 22-23.[6] As observed by the Ninth Circuit, such a claim must demonstrate that (1) defendant "engaged in 'extreme and outrageous conduct,'" (2) defendant's conduct "either intended to cause 'emotional distress or [constituted a] reckless disregard of the near certainty that such distress will result,'" and (3) the plaintiff "suffered 'severe emotional distress' as a result" of defendant's conduct. *See Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007) (citing *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 909 P.2d 486, 495 (Ariz. Ct. App. 1995)). A defendant's conduct rises to this level if it is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id.* (citing *Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969)). In *Wallace*, for instance, the Arizona Court of Appeals determined that adverse changes to a school administrator's contract and duties, even when accompanied by blunt statements that she "piss[ed] people off" and was universally despised, did not rise to the level of "extreme and outrageous conduct." 909 P.2d at 495.

Plaintiff argues that Defendant intentionally inflicted emotional distress by (1) making disparaging remarks about him in emails and (2) requiring him to continue his studies notwithstanding his back pain for reasons he alleges were contrivances. Dkt. #72 at 22-23.

---

[6] Although an incomplete claim for an intentional tort sometimes fulfills a lesser prima facie claim for negligence, Arizona law does not recognize a claim for negligent infliction of emotional distress under these circumstances. *See Pierce v. Casas Adobes Baptist Church*, 782 P.2d 1162, 1165 (Ariz. 1989) (to make a claim for negligent infliction of emotional distress, Plaintiff must "(1) witness an injury to a closely related person, (2) suffer mental anguish manifested as physical injury, and (3) be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant."). Plaintiff does not claim that Defendant injured a closely related person, or that Plaintiff was in a zone of danger. Dkt. ##49 at 15-17; 72 at 22-23.

- 15 -

1  He relies on *Fox v. General Motors*, 247 F.3d 169 (4th Cir. 2001).  Defendant argues that
2  Plaintiff's allegations, even if true in their entirety, do not entitle him to relief for emotional
3  distress in Arizona.  Dkt. #78 at 10.  For the following reasons, the Court agrees.

4  In *Fox*, the court determined that a West Virginian with a back injury had a cause of
5  action for a hostile work environment under the ADA because he was perpetually subjected
6  to vulgarity and harmful assignments by supervisors and coworkers.  247 F.3d at 173-176.
7  He was assigned heavy lifting work that he was physically unable to perform, and then
8  publicly berated with profanities and insults: "[w]hy the F--- can't you do it?," "handicapped
9  MF," and "[h]ow the F--- do you take a S[---] with these restrictions?" were just a few
10 examples.  *Id.* at 173.  This abuse continued for so long that the plaintiff sought psychiatric
11 care and effectively abandoned his job.  *Id.* at 174.

12 *Fox* does not support Plaintiff's claim.  Even though the conduct in that case was
13 arguably "extreme and outrageous" because it resulted in persistent, profane humiliation in
14 every aspect the plaintiff's job, he did not state a claim for emotional distress.  And even
15 assuming Regent's administration referred to Plaintiff as a "Yahoo" behind his back, such
16 an insult pales in comparison to prolonged workplace harassment requiring psychiatric care.
17 *Cf. Fox*, 247 F.3d 173.  The disparaging remarks about Plaintiff are more akin to those found
18 insufficient in *Wallace*.  *See* 909 P.2d at 495.

19 Similarly, Plaintiff's allegation that Defendant's conduct "forced" him to study despite
20 his back pain is not sufficient.  Defendant's suggestion that Plaintiff withdraw from the
21 School, though allegedly discriminatory, does not rise to the level of being "beyond all
22 possible bounds of decency" nor "atrocious and utterly intolerable" in a civilized society.
23 Moreover, Plaintiff does not assert that he suffered severe emotional distress; he alleges that
24 Defendant's conduct exacerbated his physical condition.  *See, e.g.*, Dkt. #72 at 23.  Plaintiff's
25 allegations do not support a claim for intentional infliction of emotional distress under
26 Arizona law.

27
28

## III. Plaintiff's motion for sanctions.

"Although pro se, [a plaintiff] is expected to abide by the rules of the court in which he litigates." *Carter v. Comm'r of Internal Revenue*, 784 F.2d 1006, 1008 (9th Cir. 1986); *see King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986). Rule 11(b) justifies sanctions only "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997). A court "may" impose an appropriate sanction after providing counsel with "notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1). A motion for sanctions cannot be filed, however, unless the movant notifies the alleged violator of the violation and the violator fails to correct its filing within 21 days. Fed. R. Civ. P. 11(c)(2).

Plaintiff argues that Defendant should be sanctioned for (1) misstating the manner of service on the certificate of service attached to Defendant's motion, (2) serving Plaintiff on Christmas Eve in violation of his First Amendment rights, and (3) submitting allegedly perjured affidavits from two Regent professors. Dkt. #68 at 1, 9. Plaintiff's first two grounds for sanctions are meritless. As the 1993 Advisory Committee note to Rule 11 explains, motions for sanctions "should not be made or threatened for minor, inconsequential violations of the standards proscribed" by Rule 11. Plaintiff's third ground should have been asserted only after Plaintiff complied with Rule 11(c)(2). Moreover, Plaintiff has presented no evidence of fabrication, coercion, or perjury apart from stating that the professors' assertions in their affidavits are inaccurate. *See* Dkt. #68 at 3-9. The Court will deny Plaintiff's motion for sanctions. The Court will not require Plaintiff to reimburse Defendant for attorney's fees and costs incurred in responding to the motion because Plaintiff is proceeding pro se. Plaintiff is advised, however, that the Court will consider imposing such fees and costs if similarly unwarranted motions are filed in the future.

## IV. Plaintiff's motion to strike.

Local Rule of Civil Procedure 7.2(m)(1) provides that "[u]nless made at trial, a motion to strike may be filed only if it is authorized by statute or rule . . . or if it seeks to strike a part

- 17 -

of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order." Under the Federal Rules of Civil Procedure, a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Because an affidavit is not a pleading within the meaning of the Rules, it cannot normally be stricken. *See* Fed. R. Civ. P. 12(f); Fed. R. Civ. P. 7(a) (limiting the definition of "pleadings" to complaints, answers, and replies); *Burns v. Lawther*, 53 F.3d 1237, 1241 (11th Cir. 1995) ("Rule 7 explicitly excludes everything else from its definition of pleadings."); *Int'l Longshoreman's Assoc. v. Va. Int'l Terminals, Inc.*, 904 F. Supp. 500, 504 (E.D. Va. 1995) ("even a properly made motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted"). Rather, stating "an objection to the admission of evidence" is the proper method to prevent an affidavit from reaching a fact finder. *See* LRCiv 7.2(m)(2)**.**

Plaintiff has not moved to strike a portion of Defendant's motion, but affidavits and a deposition attached to that motion. The court will deny the motion to strike because neither Defendant's motion nor its attachments are "pleadings," there is no statute, rule, or order that authorizes Plaintiff's motion, and there is no statute, rule or order that prohibits Defendant's attachments. *See* Fed. R. Civ. P. 7(a), 12(f); LRCiv 7.2(m)(1); *Burns*, 53 F.3d at 1241.

**V.    Plaintiff's motions to introduce new evidence.**

Because the Court will deny Defendant's motion for summary judgment with respect to Plaintiff's alleged disability, Plaintiff's motion to introduce new evidence of that disability will be denied as moot. For the same reason, the Court will deny Plaintiff's request to submit a corrected deposition.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Dkt. #65) is **granted in part** and **denied in part**.

2. Plaintiff's motion for sanctions (Dkt. #68) is **denied**.

- 18 -

3. Plaintiff's motion to strike evidence (Dkt. #74 at 2-3) is **denied**.
4. Plaintiff's motions to introduce new evidence (Dkt. ##74 at 4-5; 80) are **denied** without prejudice.
5. The Court will set a final pretrial conference by separate order.

DATED this 13th day of April, 2009.

_____
David G. Campbell
United States District Judge

- 19 -